FRANCIS E. HEATH, executor, *vs.* ELVIN JAQUITH.

Kennebec. Decided October 21, 1878.

*Evidence. Promissory notes.*

The defendant, in an action on a promissory note, to show fraud in its inception, introduced, as a witness, the agent of the Granite Agricultural Works, whose promise was the consideration of the note, who testified he sold the note to the plaintiff. *Held*, that the defendant could not introduce the declarations of the witness, not accompanying any act within the scope of his agency, that he had not sold the note but left it for collection.

If a party, having the burden of proof upon an issue necessary to the maintenance of an action, or to the defense of a *prima facie* case, introduces no evidence which, if true, giving to it all its probative force, will authorize the jury to find in his favor, the judge may direct a verdict against him.

If a judge improperly submits a case to the jury, and they deliberate upon it and report that they cannot agree, he still has the same power to direct a verdict that he had before the submission.

Such direction supersedes all instructions previously given to the jury.

ON EXCEPTIONS.

ASSUMPSIT on this note, made December 4, and dated back:

"$398.50.   Clinton, Oct. the 1, 1874.   One year after date, I promise to pay to the order of C. B. Mahan, agent, three hundred ninety-eight 50–100 dollars, at the People's National Bank, Waterville, Me.   Value received. (Signed) Elvin Jaquith."

The following was executed at the same time:

"Office of the Granite Agricultural Works.   Proprietors of the Granite Mower and Reaper.   Manufacturers and dealers in agricultural implements, iron and wood-working machinery.

Lebanon, N. H., Dec. 11, 1874. Elvin Jaquith, of Clinton, Me., bought of Granite Agricultural Works

| 2 | ‡ | 0 | Mower, 4—9 | 150.00 |
|---|---|---|------------|--------|
| 2 | ‡ | 1 | Mower, 4—6 | 150.00 |
| 1 | ‡ | 2 | Mower, 4— | 75.00 |
| 2 | ‡ | 1 | Side Hill Plower, | 23.50 |
|   |   | 1 | Pair Shafts, | 11.75 |
|   |   |   |            | 398.50 |

"Received payment by note payable at the People's National Bank, Waterville, Me. We hereby agree with the said Jaquith that if he should not be able to sell all the above goods before July the 20th, 1875, and shall notify us of such fact, by mail or otherwise, at that time, we will then send a general agent to assist him in the sale of the same. If then neither our agent nor the said Jaquith can succeed in selling all the above goods before August the 1st, 1875, then we will take them off his hands and pay him the same prices at which they are now billed to him, with all money paid out for railroad freight charges on same from our factory. We hereby reserve the right to send an agent to assist the said Jaquith at any time when we deem it necessary, in order to secure the sale of the said goods, and will account to the said Jaquith for all goods so disposed of by us. It is also further agreed that if the said Jaquith shall succeed in selling all the said goods, either alone or with our aid, before August the 15th, 1875, then the said Jaquith shall pay his obligation given this day for the same, in good faith, and the same as if this agreement had not been given at all.

"The above goods shall be well housed and properly cared for at all times.

"All the above goods are warranted from flaws or other defects in manufacturing.

"I hereby accept the terms of the above agreement, and will accept the goods named above in good faith, and do the best I can, soon as sent, to sell the same and pay for them as above specified. (Signed) Elvin Jaquith. Granite Agricultural Works. C. B. Mahan, agent."

There was evidence that this note and the one described in

*Ticonic Bank* v. *Bagley, ante,* 249, were sold to S. Heath, the plaintiff's testator, for $600, without knowledge on his part of any infirmity therein.

The jury took the case under instructions and retired, and subsequently came into court and reported that they were unable to agree upon the facts. The presiding justice then addressed them as follows:

" Gentlemen. Rather than there should be a disagreement in this case I will give a rule that will relieve you from any trouble. I had serious doubts whether I should submit this case to you in the manner that I did. It has been once before the law court upon the evidence substantially as developed here, and the court held that the evidence was not sufficient to authorize a verdict in favor of the defendant, and sent it back again. And I instruct you now that the evidence is not sufficient to authorize a finding in favor of the defendant, and you may return a verdict for the plaintiff for the amount of the note, with interest from the 4th of October, 1875, to the present time."

The verdict was for the plaintiff; and the defendant alleged exceptions.

*L. Clay,* for the defendant.

*E. F. Webb,* for the plaintiff.

LIBBEY, J. This is an action on a promissory note for $398.50, dated October 1, 1874, signed by the defendant, payable to the order of C. B. Mahan, agent, in one year from date, and indorsed by Mahan.

I. Exception is taken to the ruling of the presiding judge, excluding evidence of the declarations of Coburn Ireland, the agent of the Granite Agricultural Works, who made the contract with the defendant and took the note in suit, made some time after the sale of the note to Heath, the plaintiff's testator, that he had not sold the note, but had left it with Heath for collection. Ireland was the defendant's witness, and testified to the sale to Heath. He could not introduce his declarations to contradict him. They were not made accompanying any act of the agent within the scope of his authority. It is well settled that they are not admissible.

II. After the case had been committed to the jury, and they had deliberated upon it for some time, they were brought into court and reported that they could not agree. The presiding judge, thereupon, directed them to retire and return a verdict for the plaintiff for the amount due on the note. They retired and returned a verdict in accordance with that direction.

The learned counsel for the defendant maintains that the direction of the judge to the jury is erroneous on two grounds.

1. It is contended that, where a case is opened to the jury, and there is evidence submitted to them by both parties, the judge has no power to direct a verdict for the plaintiff or defendant.

2. It is maintained that there was sufficient evidence in the case to authorize a verdict for the defendant.

Upon the first point relied upon by the defendant, we regard the rule as well settled by the modern decisions that, if the party having the burden of proof upon an issue necessary to the maintenance of an action, or to the defense of a *prima facie* case, introduces no evidence which, if true, giving to it all of its probative force, will authorize the jury to find in his favor, the judge may direct a verdict against him. *Beaulieu* v. *Portland Company*, 48 Maine, 291. *Cooper* v. *Waldron*, 50 Maine, 80. *Bank* v. *Hagar*, 65 Maine, 359. *White* v. *Bradley*, 66 Maine, 254. *Polley* v. *Lenox Iron Works*, 4 Allen, 329. *Denny* v. *Williams*, 5 Allen, 1. *Dame* v. *Dame*, 20 N. H. 28. *Parks* v. *Ross*, 11 How. 362. *Hickman* v. *Jones*, 9 Wall, 197. *Merchants' Bank* v. *State Bank*, 10 Wall. 604. *Improvement Co.* v. *Munson*, 14 Wall. 442. *Pleasants* v. *Fant*, 22 Wall. 116. *Commissioners* v. *Clark*, 94 U. S. 278. *Ryder* v. *Wombwell Law Rep.*, 4 Exch. 33, 39. Law Rep., 2 Priv. Council app's, 335.

In *White* v. *Bradley*, Barrows, J., in the opinion of the court, says : " But were the case before us upon exceptions to the ordering of a non-suit, we should not hesitate to declare that the later and better doctrine and practice are in favor of the course taken by the presiding judge, viewed merely as a question of practice ; *i. e.*, if upon the unquestioned facts, and the uncontroverted testimony introduced, by which party soever it is offered, it is apparent that the plaintiff's action cannot be maintained, it is competent

for the presiding judge so to declare in the form of a ruling, the correctness of which may be tested upon exceptions or upon report in the present form. . . And this, although there may be some evidence to support the plaintiff's claim, if it is not sufficient to justify the jury in finding the issue in his favor."

In *Denny* v. *Williams*, Chapman, J., in delivering the opinion of the court, says : " But the practical line of distinction is that, if the evidence is such that the court would set aside any number of verdicts rendered upon it, *toties quoties*, then the cause should be taken from the jury by instructing them to find a verdict for the defendant."

In *Commissioners* v. *Clark*, *supra*, the rule is very clearly and succinctly stated by Clifford, J., as follows : " Matters of fact are involved in the second instruction. Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence.

" Decided cases may be found where it is held that, if there is a *scintilla* of evidence in support of a case, the judge is bound to leave it to the jury ; but the modern decisions have established a more reasonable rule, to wit : that before the evidence is left to the jury there is, or may be, in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."

This rule is fully supported by the other cases cited from the supreme court of the United States. It is the same in principle as the well established rule that the judge, on request, is not required to give to the jury the law upon any abstract issue, when there is no evidence in the case which would warrant the jury in finding such issue in favor of the party requesting the instruction. This rule is so uniformly held that no citation of authorities is required.

And it makes no difference on which party the burden of proof

is imposed. If upon the defendant, upon any issue essential to his defense, and he fails to produce any evidence in support of it, or any which, if true, would, in law, authorize the jury to find in his favor, he has no right to have the issue submitted to them, and the case may be taken from the jury by directing a verdict for the plaintiff, as in *Commissioners* v. *Clark*, and *Improvement Co.* v. *Munson, supra*, as well as for the defendant if the plaintiff fails to introduce evidence sufficient to authorize the jury to find in his favor. It would be but an idle ceremony to submit the case to the jury by instructions authorizing them to find for a party, when he has introduced no evidence which would authorize it; and when, if they find a verdict in his favor, it would be the duty of the court to set it aside because there was no evidence sufficient to support it. And if, in such case, the judge has improperly submitted the case to the jury, and they have retired and deliberated, and reported that they cannot agree, he has the same power to direct them to find a verdict against the party failing in his evidence, as he had before submitting the case to them.

The direction of the judge to the jury to return a verdict for the plaintiff was correct, unless there was evidence in the case which, if true, giving it all its probative force, would have authorized the jury to proceed and render a verdict for the defendant.

This brings us to the second proposition. The plaintiff made out a *prima facie* case by introducing the note and indorsement declared on. He is entitled to recover, unless the defendant shows some legal defense. He places his defense upon two grounds. 1. That the note was procured by fraud. 2. That there was a failure, or partial failure, of the consideration.

Upon the first ground the defendant may prove that the note originated in fraud; and if he establishes such a defense, a presumption arises that the plaintiff's testator was the holder without value, and, to overcome this presumption, the plaintiff must prove that his testator paid value for it. But upon the issue of fraud in the inception of the note, the law imposes the burden of proof upon the defendant; and the plaintiff is not called upon to prove that his testator was the holder for value, until the fraud is proved. *Commissioners* v. *Clark, supra*.

For the purpose of proving the fraud, the defendant introduced two witnesses. Ireland, who was the agent of the Granite Agricultural Works, and took the note in suit, and Nathaniel White. From a careful examination of the testimony of these witnesses, we fail to see anything which tends to prove fraud in the inception of the note. There is nothing that tends to prove misrepresentation, or suppression of any fact material for the defendant to know in entering into the contract, or any device or artifice to mislead him and induce him to give the note. Nothing in their testimony is pointed out by the learned counsel for the defendant in his argument tending to prove the issue of fraud.

The defendant also introduced the contract, dated December 4, 1874, made between the parties at the time the note was given, and which was the consideration for it; and he relies upon that as evidence of fraud. By this contract it appears that the defendant bought of the Granite Agricultural Works certain of their manufactured goods amounting to $398.50, for which he gave his note for that sum, payable at the People's National Bank, Waterville. It contains an agreement that, if the defendant, with the aid of the agent of the company, as therein specified, shall not be able to sell all of the goods before August 1, 1875, then they would take them off his hands and pay him the same prices at which they were billed to him, with all money paid out for railroad freight charges on the same from their factory. But if the defendant sold said goods, either alone or with their aid, before August 15, 1875, he was to pay his obligation given that day for the same. The goods were warranted free from flaws and other defects in manufacture. The contract is signed by the company, and the following memorandum at the bottom is signed by the defendant: "I hereby accept the terms of the above agreement and will accept the goods named above in good faith, and do the best I can, soon as sent, to sell the same and pay for them as above specified."

The defendant gave his negotiable note for the goods, and took this executory contract to protect himself in case he should not be able to sell them within the time stipulated. If the Granite Agricultural Works were solvent, and should continue so, it fully

protected him.   He took his chances of profits if he could sell; if not, he had the contract of the company to take the goods and reimburse him for all he had paid.   There is no evidence tending to show that the company was insolvent.   It cannot be inferred without evidence.   We see nothing in the terms and stipulations of the contract from which fraud can be inferred.   The most that can be said of it is that it is a transaction which a prudent man would not be very likely to enter into ; but it cannot be inferred from that consideration that it was procured by fraud, especially as there is no evidence tending to show that the defendant did not fully understand the terms of the contract he was making.   If such a test could properly be applied to a contract, the defense of fraud in its inception would become a very common one.

But if the evidence was sufficient to authorize the jury to find fraud in the inception of the note, we think the evidence clearly and conclusively shows that the plaintiff's testator paid full value for it; and there is no evidence tending to show that he had any notice of such fraud.   Upon the issue of payment of value for the note there is no conflict of evidence.   The defendant's witness, Ireland, says he thinks he sent the note, immediately after taking it, to Mahan, and that it was returned to him a short time before he sold it to Mr Heath, the plaintiff's testator; that he could not positively swear he sold this note to Heath, but that he thinks so beyond a doubt; that he sold two notes to Heath for $600, and took his check, December 9, 1874, on the Ticonic Bank; that he had no doubt one of the notes was the note in suit, the other was against one E. E. Bagley; the Bagley note was smaller than the one in suit ; that the two notes amounted to $670 or $680, and that Heath paid him the amount of the notes less twelve per cent.   There is no evidence that he sold Heath any other note.   The plaintiff put in evidence the check drawn by his testator on the Ticonic Bank, dated December 9, 1874, for $600, with the testimony of the cashier that it was paid the same day; also his bank check book, showing an entry in his handwriting, under date of December 9, 1874, of a check to "Ireland, 2 notes, $600."   This evidence, uncontroverted, would not authorize the jury to find that the plaintiff's testator was not the holder for

value. The defense of fraud in the inception of the note cannot avail the defendant.

After what has been said as to the defense on the ground of fraud, it is hardly necessary to say that the defense of failure of consideration is not open to the defendant. The plaintiff's testator was the holder of the note for value, and he could not have had notice of failure of consideration when he took it; because, if there was a failure of consideration, it was long afterwards.

It is unnecessary to consider the other grounds of exception to the charge of the judge, as the final direction to the jury to return a verdict for the plaintiff for the amount due on the note, superseded all that had been previously said to them; and if the defendant was not aggrieved by the final direction, he could not be by the charge that had previously been given to them.

*Exceptions overruled.*

Appleton, C. J., Danforth, Virgin and Peters, JJ., concurred.