LILLIAN R. COOMBS *vs.* ALFRED KING.

Cumberland.   Opinion December 14, 1910.

*Appeal.   Review.   Verdict.   Damages.   Measure of Damages.   Physicians and Surgeons.   Skill and Care Required.   Malpractice.   Burden of Proof.*

1. While the burden was on the plaintiff to satisfy the jury of the defendant's liability yet after verdict for the plaintiff, the burden is on the defendant to make it clearly appear that the verdict is wrong.   In the opinion of a majority of the court in the case at bar the defendant has not sustained that burden.

2. In an action for personal injuries, damages may be awarded for mental chagrin, mortification, and discomfort at physical disfigurement, when they are the direct and natural consequence of the physical injury.

3. A physician contracts with his patient that he has the ordinary skill of members of his profession in like situation, that he will exercise ordinary or reasonable care and diligence in his treatment of the case, and that he will use his best judgment in the application of his skill to the case, but he is not an insurer of favorable results, and, if he possesses ordinary skill, uses ordinary care, and applies his best judgment, he is not liable even for mistakes in judgment.

4. In an action by a patient against a physician for damages from the physician's alleged negligence, the burden is on the plaintiff to show a malpractice.

On motion and exceptions by defendant.    Overruled.

Action on the case to recover damages for personal injuries suffered by the plaintiff through the use of an X-ray machine prescribed by the defendant.    Plea, the general issue.    Verdict for plaintiff for $3,500.    The defendant filed a general motion for a new trial and also excepted to certain rulings and refusals to give certain requested instructions.

The case is stated in the opinion.

*Newell & Skelton,* for plaintiff.

*Winford G. Chapman,* for defendant.

SITTING :    SAVAGE, SPEAR, CORNISH, KING, JJ.

SAVAGE, J.    This is an action on the case against a physician for malpractice.    The verdict was for the plaintiff.    The case comes up on the defendant's motion for a new trial, and exceptions.    We will first, as briefly as we may, state our conclusion under the motion.

In 1901 the plaintiff was treated by the defendant for what she terms "scrofulous glands of the neck," and what the defendant says were enlarged "lymphatic nodes or glands."    They were on both sides of the neck.    The defendant cut them out.    In 1903 bunches again appeared on the neck, one on the right side under the chin, and the other, the plaintiff says on the right side and the defendant says on the left side.    The defendant diagnosed the trouble as being possibly Hodgkin's Disease, and advised X-ray treatment. It turned out not to be Hodgkin's Disease, but that is immaterial, because it is not questioned that X-ray treatment was proper for the real trouble.

The defendant himself administered the treatment three or four times, and afterwards it was administered by his office girl, as he says, under his direction.    It was administered twenty-five times in all.    The plaintiff says it was administered three times a week for fifteen minutes each time ; the defendant says, twice a week, for ten minutes each time.    At each treatment the plaintiff was seated in a chair, her head thrown back, and turned somewhat to the right, so as to expose the neck and under part of the chin.    Her face

down as low as the lips was protected from the X-rays by a sheet of lead.   The tube of the machine was placed somewhat to the left of the patient's neck, and fifteen inches distant.   The left side of the neck, therefore, where the plaintiff says there was no bunch, was nearer to the tube than the affected parts were.   An unintended result of this treatment was a very severe and greatly disfiguring X-ray burn on the left side of the plaintiff's neck and lower part of the face, for which she seeks to hold the defendant legally responsible.

The measure of a physician's legal responsibility has been stated many times by this court.   He contracts with his patient that he has the ordinary skill of members of his profession in like situation, that he will exercise ordinary or reasonable care and diligence in his treatment of the case, and that he will use his best judgment in the application of his skill to the case.   *Patten* v. *Wiggin*, 51 Maine, 594;   *Cayford* v. *Wilbur*, 86 Maine, 414;   *Ramsdell* v. *Grady*, 97 Maine, 319.   The physician is not an insurer.   He does not warrant favorable results.   If he possesses ordinary skill, uses ordinary care, and applies his best judgment, he is not liable even for mistakes in judgment.   Medical science is not yet, and probably never can be, in many respects, an exact, certain science.   The practitioner cannot be expected to know, or be bound to diagnose correctly, that which is unknowable, as many of our hidden ailments may be.

The rule of liability is not a hard one, it is a reasonable one. And the burden is on the plaintiff to show a malpractice.

In this case it is conceded that the defendant is a physician of great learning and skill.   There is no controversy about that. The plaintiff rests her claim to retain her verdict upon the proposition that the defendant failed to use ordinary care, which is reasonable care, and to apply his best judgment, in his treatment of her case.   And while she specifies several particulars, we shall notice only one, namely, want of attention and watchfulness.   She claims that the defendant did not give the proper and requisite attention to prevent the burning, and that the burning resulted in consequence.

It appears from the evidence that the X-ray treatment is usually safe, so far as burning is concerned, when properly administered, but that it is a treatment that requires continued care and attention. It is contended by the plaintiff, and we think the jury were warranted by the evidence in finding, that the safety of the treatment as to burning, depends upon several elements. Among these is the distance of the tube from the point of exposure, for the shorter the distance, as it seems, the more potent are the rays. Others are the frequency of the application, the length of each treatment, and the strength of the current. It also seems to be agreed that the potency or penetrability of the rays depends in a measure upon the condition of the tube. It seems that there are so called "hard" or high vacuum tubes, and so called "soft" or low vacuum tubes, and that a "soft" tube by time or use will gradually become "hard," and that the same tube may become "soft" again. These qualities affect the penetrability of the rays and their power of doing harm by burning. Then, too, is the personal susceptibility of the patient. The rays do not effect all persons alike. Some are more susceptible to burning than others. And the degree of this susceptibility is not ascertainable in many cases for many days or even weeks after the treatment is commenced. It should be noticed, too, that the burning effects of the X-ray treatment do not manifest themselves externally at once. Ordinarily they do not for one or two weeks, but the time may be shorter or it may be much longer. Meanwhile the process may be cumulative, in the sense that each succeeding treatment adds to the effect of the prior ones.

The mere statement of these phases of the X-ray treatment shows clearly that it cannot be administered according to fixed and unvarying rules. All the medical witnesses concur in saying that it is necessary to watch for the manifestations of burning during the entire period of treatment. The treatment should be adjusted to the person and the exigencies of the case. The physician may vary or temporarily discontinue the treatment. He must watch, examine and use his best judgment. And this is what the plaintiff says the defendant here did not do. The defendant says that he did.

It is argued for the defendant that his responsibility must be considered with reference to the science of X-ray treatment as it was understood in 1903.  This is true.  There is testimony that great advances have been made in X-ray knowledge since 1903 but it does not appear what they are.  But however that may be, in 1903 the defendant knew that X-rays could burn, and he knew of the need of watchfulness to detect the signs of burning, in order that it might be prevented.  This appears from his own testimony.

We do not undertake to analyze the testimony here.  It is unnecessary.  It is sufficient to say that if that offered by the plaintiff is true, she is entitled to hold her verdict.  On the other hand, if the jury should have adopted the version of the defendant, the verdict is wrong.  There is nothing in the plaintiff's story which is inherently improbable or inconsistent.  Unless the jury were not warranted in believing that story, the court cannot interfere.  We cannot substitute our own impressions for any findings which the jury were authorized to make.  While the burden was on the plaintiff to satisfy the jury of the defendant's liability, the burden is now on the defendant to make it clearly appear to us that the verdict is clearly wrong.  That he has failed to do.

The exceptions relate to instructions given and instructions refused on the question of damages.  The defendant contends that the plaintiff's mortification and distress of mind from the contemplation of her disfigured condition and of its effect upon her fellows is "too remote, indefinite and intangible to constitute an element of damages" in this case.  And at the trial he requested the court so to rule.  But the court refused the request, and instructed the jury that the plaintiff might recover for "mental chagrin, mortification and discomfort at her disfigurement."

On this question the authorities are not agreed, and the rule of damages is not the same in all jurisdictions.  In this State the question has never been before the Law Court.  But at nisi prius, in cases where the mental suffering has been the direct and necessary consequence of the physical injury, the Justices have almost without exception given the rule which was given in this case.

There is good reason for the rule. The disfigurement is a physical injury. It is a continuing injury. The mental suffering may continue with it. The mental suffering is a real injury. It proceeds necessarily and inevitably from the physical injury. It is a natural consequence of the injury. Compensation, omitting this element, is not full compensation. One might be made repulsive to the sight for life with comparatively little physical injury, and yet according to the rule contended for, be entitled to but little compensation. The reason given in some cases, that the amount of mental pain caused by disfigurement necessarily varies so much with the character, temperament and circumstances of the injured person that no just measure of damages from it can be found, applies equally well to physical pain, though perhaps in a less degree. And damages are always allowable for physical suffering. 1 Sedgwick on Damages, sect. 46; *Ballou* v. *Farnum*, 11 Allen, 73. Mental suffering is no more intangible and indefinite than physical suffering is. The damages from suffering, either mental or physical, cannot be weighed; it cannot be measured; it cannot be computed. It can only be estimated. The difficulty in making the estimate affords no good reason for failure to make it, *Ballou* v. *Farnum*, supra. The estimation must depend upon the good sense, sound judgment and enlightened conscience of the jury, under all the facts and circumstances of the particular case, and the sensibilities of the particular person.

There is good authority for the rule. In *McDermott* v. *Severe*, 202 U. S. 606, the trial Judge instructed the jury "to consider mental suffering, past and future, found to be the necessary consequence of the loss of the plaintiff's leg." It was objected that this instruction permitted a recovery for "future humiliation and embarrassment to mind and feelings because of the loss of the leg." The court sustained the instruction, saying, "where such mental suffering is a direct and necessary consequence of the physical injury, we think the jury may consider it." So in *Kennan* v. *Gilmer*, 131 U. S. 22, the court said, "When the injury, whether caused by wilfulness or by negligence, produces mental as well as bodily anguish and suffering, independently of any extraneous considera-

tion or cause, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded." See also *Atlanta, etc., R. R. Co.* v. *Wood*, 48 Ga. 565 ; *Sherwood* v. *Chicago & W. M. Ry. Co.*, 82 Mich. 374 ; *Heddles* v. *Chicago & N. W. Ry. Co.*, 77 Wis. 228 ; 20 Am. St. Rep. 106 ; *Newbury* v. *Manufacturing Co.*, 100 Iowa, 441 ; *Schmitz* v. *St. Louis & Iron Mountain & Southern R. R. Co.*, 119 Mo. 256 ; 1 Sedgwick on Damages, sects. 44, 46 ; 13 Cyc. 145 and cases there cited.

We hold, therefore, that when, as in this case, there is mental chagrin, mortification or discomfort at disfigurement, not independent of the physical injury, but the direct and natural consequence of it, the plaintiff may have damages awarded for it.

*Motion and exceptions overruled.*