ELIZABETH M. OLSEN
*vs.*
PORTLAND WATER DISTRICT

Cumberland.   Opinion, June 24, 1954

*George H. Hinckley,* for plaintiff.

*Verrill, Dana, Walker,*
*Philbrick & Whitehouse,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

FELLOWS, C. J. This is an action for alleged negligence brought by Elizabeth M. Olsen to recover for injuries sustained, as she claims, when she stepped backwards against a manhole cover owned by the Portland Water District. At the close of the evidence the justice presiding in the Superior Court for Cumberland County directed a verdict for the defendant. The case comes to the Law Court on the plaintiff's exceptions.

Briefly, the facts appear to be that the plaintiff was a Girl Scout leader 58 years of age. On the thirtieth day of April, 1952 she was engaged in directing the movements of a troop of Girl Scouts, which troop was in front of the "girl scout home" in Cape Elizabeth, Maine. The yard where the troop was moving back and forward in front of the home was a cleared gravelled surface. Beyond, or at the side of this gravelled yard and near the highway, is rough ground where there is a telephone pole, and near the telephone pole is a manhole of the defendant. This manhole contained meters, and was covered by an iron cover that was nearly two feet square. The manhole and telephone pole were surrounded by a small parcel of unimproved land, at or near the junction of two ways, with some grass and small bushes on it.

The plaintiff was familiar with the location of the girl scout building, the yard in front of the building, and the adjoining ground in the neighborhood of the telephone pole and manhole cover. She had been a frequent visitor for ten years, although this was the first Spring visit. She was active in girl scout work, and trained girl scouts in the building and on the gravelled land in front, and elsewhere.

The plaintiff testified as follows:

"Q. Now just before this accident what were you doing?

A. Well, I was teaching them the scouts' pace, then I lined up three lines of girls for compe-

tition; we were going to pick out the best group in the scouts' pace, so we lined them up and I blew my whistle for them to start and I stepped back and went over backwards.

Q. Stepped back one or two steps or what?
A. Just one step.

Q. And your heel struck something?
A. Yes.

Q. Did you notice what you tripped over?
A. Well, I feel, and after I got up I saw it was— you know—

Q. What?
A. First I could see just the iron, couldn't see anything else.

Q. You saw this iron that you had fallen over?
A. I was wondering what had happened.

Q. Did you notice what the condition was, after you fell, of the iron?
A. Well, I was in quite a lot of pain. I am afraid I don't know.

Q. You don't know very much about what the condition was?
A. No.

Q. Where did you fall, or how did you fall?
A. Directly backwards.

Q. And what did you strike on?
A. The iron, I imagine.

Q. And what part of your body?
A. The elbow."

The plaintiff also testified that she was in that spot outdoors with the troop for a quarter to half an hour before her accident; that she did not know the manhole cover was there; that she paid no particular attention to the land near the telephone pole where she was standing, just "looked around in general," and noticed nothing "wrong."

"Q. And then as you blew the whistle you stepped backward, did you?

A. Just took one step back.

Q. Had you stepped backward earlier that day?

A. I don't remember.

Q. But at the moment when you stepped back you didn't know what was behind you? Is that correct?

A. Yes, I didn't know what was behind me.

Q. Had you noticed that manhole cover on previous occasions?

A. Never knew it was there.

Q. You have been in that yard many times?

A. Over ten years.

Q. And whenever you go out with your girls you usually go out in the front of the yard?

A. Yes, we have laid trails and done a lot of things out there.

Q. And you have no memory of ever having noticed it before?

A. No.

Q. Do you have any memory now as to how high above the earth it projected?

A. I don't know how high, but I know it was up.

Q. Do you remember looking at it after the accident?

A. Well, I looked to see what I fell over."

Assistant Superintendent Bodge of the defendant District was called by the plaintiff as her first witness, and testified that he examined the manhole two days after the accident, and that it was then about four inches above the surrounding ground. It consisted of a plank lined vault, five feet deep and 22 x 20 inches on top, covered by an iron frame rectangular in shape with a round cover set in the rectangular frame. Inside the vault were water meters,

read every three months by a District meter reader. One meter was for the girl scout building and one for a nearby residence. When the Assistant Superintendent made his examination he found that the top of the wooden lining of the vault, consisting of horizontal hemlock planks, had rotted away and had been repaired by taking the iron top off, and the old plank replaced by oak plank such as was not used by the District. Whoever made the repairs had laid the oak plank even with the ground, and the iron frame, four inches deep, was above ground. The plaintiff's witness did not know who made the repairs; that the defendant District had not ordered them; that it was his duty to order all repairs made; that no complaint about this manhole had come to him; that he could not say if frost was responsible for this four inch height; that the cover of the vault was clearly visible, and there was no accumulation of grass to hide it.

James Whitten the meter reader for the defendant, who had been employed as meter reader for thirteen years, testified that he examined this manhole and read the meters on the twenty-first of March, and that on that day the manhole cover was even with the surface of the ground although there were new plank inside. Whitten did not know what happened if anything after he read the meter and before the date of the accident on April 30th.

The plaintiff claims that she was in the exercise of due care; that with the cover four inches above the ground, she says it was a "concealed danger," although at that time in the Spring there was little or no grass, and no grass would grow on an iron cover in any season. The cover could be plainly seen and the plaintiff says she saw it after she fell. She did not look to see where she was stepping before she stepped back and fell. She said she struck on "the iron I imagine." She did not know and did not say she knew what caused her to fall. She reasoned after the fall

and after she looked at the manhole frame and cover, that it was the frame and cover that caused her injury.

The plaintiff claims in her writ that the defendant District was negligent in that it did not maintain a manhole and manhole cover in proper condition because the cover was four inches above the ground "creating a hazard and causing an obstruction over which said plaintiff tripped and fell."

A verdict should be directed when, giving the evidence introduced full probative value, it is plain that a contrary verdict could not be sustained. *Weed* v. *Clark,* 118 Me. 466; *Johnson* v. *Portland Terminal Co.,* 131 Me. 311, 312; *Heath* v. *Jaquith,* 68 Me. 433, 436.

Ordinary care requires that one give attention to where he is walking, even on a city sidewalk. *Witham* v. *Portland,* 72 Me. 539; *Raymond* v. *City of Lowell,* 6 Cush. (Mass.) 524, 533; *McClain* v. *Caribou, Natl. Bank,* 100 Me. 437.

One who steps backward without paying attention to where she is stepping is not in the exercise of due and reasonable care, as a matter of law. See *Crocker* v. *Orono,* 112 Me. 116, 119. "Thoughtless inattention spells negligence." *Callahan* v. *Bridges Sons,* 128 Me. 346; *Tasker* v. *Farmingdale,* 85 Me. 523.

When it is sought to establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict. Where verdict directed for defendant, the evidence must be viewed in the light most favorable to the plaintiff. *Bernstein* v. *Carmichael,* 146 Me. 446; *Alden* v. *Maine Central R. R. Co.,* 112 Me. 515; *Mahan* v. *Hines,* 120 Me. 371.

The burden of proof in an action for negligence is upon the plaintiff, not only to show the negligence of the defend-

ant but to show that no want of due care on his part contributed to the injury. *Rouse* v. *Scott*, 132 Me. 22.

There is contributory negligence as a matter of law where that is the only inference that can reasonably be drawn from the facts shown. "Had he been using ordinary care at the time, had he not been at fault, he would have escaped injury entirely." *Rogers* v. *Forgione Co.*, 126 Me. 354, 357.

The rules given in the following cases which are cited in the plaintiff's brief, are not at variance with the rules given in the foregoing named authorities. In *Sylvia* v. *Etscovitz*, 135 Me. 80, a car suddenly and without apparent cause leaves the road. Care and negligence questions of fact, if different conclusions may be drawn. Res Ipsa doctrine also applied. In *Howe* v. *Houde*, 137 Me. 119, the action was by passenger against auto driver, "different conclusions may be drawn from the evidence." In *Gould* v. *Transportation Co.*, 136 Me. 83, a substance came through open window of bus into passenger's eye. Negligence of company was question for jury. So also there were questions for the jury in *Frye* v. *Kenney*, 136 Me. 112, auto accident; *Gerrish* v. *Ferris*, 138 Me. 213, pedestrian struck on highway; *Searles* v. *Ross*, 134 Me. 77, mowing machine cut a boy who was asked to "touch up horses;" *White* v. *Michaud*, 131 Me. 124, where collision of automobile and motor cycle.

There is no proof of facts that show breach of duty on the part of the defendant District toward this plaintiff. It does not appear that this cover was in the limits of the highway, or that pedestrians might be expected to walk there. The manhole was placed to contain meters, one of which was for the girl scout building. The manhole had been repaired with new plank inside, but when and by whom does not appear. It does not appear whether frost, or some unknown person, raised the frame and cover four inches above the ground level, nor is it shown that any

knowledge of any unusual condition of the manhole and manhole cover (if it was unusual) ever came to the knowledge of the defendant at any time before the accident. The fact that the manhole frame and cover was four inches above the surrounding rough ground, in that place and under the conditions, was not shown to be due to negligent construction, or that it was due to lack of proper maintenance. No facts were shown to indicate that it was necessary at that place to have the cover even with the ground, except that the plaintiff claims she backed into it.

The testimony of the plaintiff, however, shows that she was directing the Girl Scout Troop for at least a quarter of an hour from where she stood near the telephone pole on the uneven ground. If she tripped over the manhole cover or some rock, root, or other obstruction, she was so close to the manhole that she hit it when she fell. If she had but glanced she would have seen. She looked about her at no time with eyes that saw anything except the girls in the troop of scouts. She failed to look about beforehand, and she did not look at the time she took the backward step. Had there been a depression she would have fallen into it. During ten years of training girl scouts in and about this building, or on the adjoining grounds, she says she had never seen the manhole cover. Mrs. Cole, one of the plaintiff's witnesses who was with the plaintiff as her assistant, admitted that the cover was more plainly to be seen because "raised up," but "we didn't see it. We were watching the girls."

If the defendant in this case can be considered negligent towards this plaintiff, the plaintiff's negligence certainly contributed to her injury. There is no other inference to be drawn from her own testimony. She is not entitled to recover. She saw the manhole and the cover, or she is guilty of negligence if she did not see. It was in the day time. It was not concealed because she said she saw it after she fell.

She says she did not know it was there before. She did not look at the time, as due care required.

The presiding justice was correct in directing a verdict for the defendant. No other verdict could be sustained. *Crocker* v. *Inhabitants of Orono,* 112 Me. 116, 119.

*Exceptions overruled.*