Myrtle M. ARONSON

v.

William S. PERKINS.

Ralph S. ARONSON,

v.

William S. PERKINS.

Supreme Judicial Court of Maine.

Oct. 17, 1967.

James H. Dineen, Kittery, Maine, Robert A. Shaines, Portsmouth, N. H., for appellants.

Harold D. Carroll, Biddeford, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

This action in which a physician is charged by Myrtle M. Aronson with malpractice is before us on appeal from the direction of a verdict for the defendant at the close of the plaintiff's evidence.

The case is governed by familiar principles of law.

First: "A verdict should not be ordered for the defendant by the trial court when taking the most favorable view of the evidence, including every justifiable inference, different conclusions may be fairly drawn from the evidence by different minds."

MacLean v. Jack, 160 Me. 93, 100, 198 A.2d 1; Maine Rules Civil Procedure, Rule 50; Olsen v. Portland Water District, 150 Me. 139, 144, 107 A.2d 480; Cyr et al. v. Giesen, 150 Me. 248, 257, 108 A.2d 316; Field & McKusick, Maine Civil Practice § 50.2.

Second: "In view of all the evidence, has the plaintiff raised an issue for a jury determination of the factual questions of negligence and proximate cause?

"The legal responsibility of the defendant to the plaintiff is well and clearly defined in the case of Coombs v. King, 107 Me. 376, at 378, 78 A. 468, where the court said:

'The measure of a physician's legal responsibility has been stated many times by this court. He contracts with his patient that he has the ordinary skill of members of his profession in like situation, that he will exercise ordinary or reasonable care and diligence in his treatment of the case, and that he will use his best judgment in the application of his skill to the case. * * * The physician is not an insurer. He does not warrant favorable results. If he possesses ordinary skill, uses ordinary care, and applies his best judgment, he is not liable even for mistakes in judgment. Medical science is not yet, and probably never can be, in many respects, an exact, certain science.' * * *

'The rule of liability is not a hard one, it is a reasonable one. And the burden is on the plaintiff to show a malpractice.' " Cyr et al. v. Giesen, supra, at 255, 108 A.2d at 320.

Third: There must of course be a causal relationship between the act of malpractice and the plaintiff's injury. The presiding Justice, in granting defendant's motion for a directed verdict, found "no evidence * * * of sufficient probative force on either of those two questions" [malpractice and causation].

In our view of the record a jury would have been warranted in finding as follows:

The plaintiff suffered a fracture of the right radius on May 25, 1961. The following day at a nearby hospital the defendant, an osteopathic physician, reduced the fracture and placed her arm in a plaster of paris cast from the elbow to the distal joints of the fingers. The hand and the fingers were immobilized for a period of three weeks in a straight position and were not placed in a position of function, that is to say, in a position normally taken in holding an object such as an orange. The defendant then removed the cast and tried without success to restore motion in the fingers and hand by passive manipulation and by heat treatments. An aluminum cast permitting motion was used after the removal of the plaster of paris cast until March 1962.

Shortly before Labor Day in September 1961 the defendant, recognizing that the treatments were not successful, suggested that the plaintiff, to quote her words, "see a bone man." The defendant then made an appointment for her with a Dr. Allen who within a few days operated upon her to correct the condition of the arm and hand. The plaintiff has been severely handicapped in the use of her hand since the accident. The hand is permanently disabled to the extent of forty percent. The precise extent of the injury from the alleged act of malpractice, however, is not found in the testimony of any of the witnesses. Dr. Martin, an orthopedic surgeon in Portland, who had examined the plaintiff at the request of the defendant and who was called to the stand by the plaintiff on this point, said:

"Q Now, assume, Doctor, that the patient is not encouraged to use the fingers and, in fact, that the fingers were immobilized in the application of a plaster of Paris cast to reduce the fracture of the distal end of the radius in a lady in her late fifties, and assume that after some three weeks this cast is removed and those fingers are stiff. Do you have an opinion as to the cause of

the fingers being stiff upon removal of the cast?

"A   Yes.  I have an opinion.

"Q   What is your opinion, Doctor?

"A   My opinion is that these fingers are stiff partly from the injury and partly from the immobilization consequent to holding the fracture.

"Q   Now, what would be the contributing part of the immobilization of the fingers in causing them to stiffen?

"A   It limits motion."

\*     \*     \*     \*     \*     \*

"THE COURT: Well, will you [Dr. Martin] state your opinion as to what the cause or causes was or were of this forty per cent limitation that you now say exists?

"THE WITNESS: The forty per cent that exists, your Honor, is due to the limitation of the motion of the fingers, caused originally by the fracture, the long period of immobilization consequent to the healing of the fracture, re-operation which also adds another period of disuse and disability to the hand in an attempt to get a good looking X-ray. Now, how you split that up as to the first procedure, your Honor, or the second procedure, or how much both contributed, I can't.  I don't know how you can do it.  I can't."

The defendant testified as follows:

"Q   Do you [Dr. Perkins] acknowledge that the fact that her fingers were immobilized in this cast for some three weeks had anything to do with her fingers stiffening?

"A   To a certain degree, yes.

"Q   To what degree, Doctor?

"A   I do not know.

"Q   Well, you will at least admit that it was a contributing cause to this condition from which the lady now suffers?

"A   It always is in a fracture case."

▮▮▮   We are satisfied that the plaintiff produced evidence warranting the jury in finding causation existed between the act of immobilizing the plaintiff's fingers and hand in the manner described for a three week period and the injuries complained of.  For our purpose it is not necessary that the evidence measure the extent of the injury in dollars.  It is sufficient if the evidence establishes that the acts complained of caused some injury.  This the plaintiff has accomplished within the "directed verdict" rule.

▮▮▮   Turning to the malpractice, we eliminate from discussion the conduct of the defendant from the removal of the plaster of paris cast three weeks after the accident.  We find in the record no expert testimony to guide the jury to a correct conclusion with reference to the later treatment, including passive manipulation.  On the contrary, the only evidence in the record would require a finding that such action by the defendant was within the bounds of proper practice under the circumstances.

We reach a different conclusion about the immobilization of the hand and fingers in the manner described for the three week period after the accident.  The defendant stated the standard of practice of an osteopathic physician in the community, and that he did not meet this standard for a reason he deemed sufficient.

The defendant, placed on the stand by the plaintiff, gave the standard in these words:

"Q   Now, you know, don't you, that proper medical practice says that wherever possible, you should try to keep the motion in the fingers in treating a fracture of the distal end of the radius, don't you?

"A   I acknowledge that.

"Q But you say you didn't do this in this case?

"A In this particular case, no.

"Q And you say the reason you didn't do that is because you knew that this lady had a rheumatoid arthritic condition in her hand?

"A That is true.

"Q So that you acknowledge you did not use the accepted standard of ordinary medical practice in casting this hand. Is that correct?"

\* \* \* \* \* \*

"THE WITNESS: I would acknowledge it. Yes.

"THE COURT: Just a moment. There has been an objection. And the question should be asked of the witness again to make sure he understands the question.

"MR. SHAINES: Would you read it back, Mr. Reporter. (Previous question read.)

"THE WITNESS: I acknowledge it."

Dr. Martin's testimony substantiated that of the defendant on accepted medical practice. In the following excerpts from the record, Dr. Martin stated plainly a cardinal rule in casting.

"Q Now, Dr. Martin, isn't it true that when you talk about casting the phalangeal joints in a person's hands that it would be a cardinal rule in the medical or surgical practice to always cast those joints in a position of function so that the hand is in a position of function?"

\* \* \* \* \* \*

"THE WITNESS: My answer would be Yes."

\* \* \* \* \* \*

"THE COURT: Leaving aside the septic part, septic hand. In a situation of the kind that presents itself here where there was the type of fracture that the plaintiff suffered about which you know—

"THE WITNESS: Yes, your Honor.

"THE COURT: (continuing)—in what position would you cast the hand? Does the cardinal rule apply in that case?

"THE WITNESS: In the position of function, your Honor.

"THE COURT: In the position of function. All right."

The defendant stated his reason for not following the accepted practice as follows:

"A Normally you cast the, in other words, around the first knuckle joint. Normal conditions. But in this case to immoblize—this patient has an arthritic—I have been treating this patient for rheumatoid arthritis on previous occasions."

The plaintiff, recalled to the stand after the defendant's testimony, said:

"Q Are you aware, Mrs. Aronson, that you were treated by Dr. Perkins for rheumatoid arthritis?

"A I never was.

"Q Thank you. Did you ever complain about your hands having arthritis?

"A No. The only conversation that ever come up, I said my mother and father had it. I had it in my spine. Some day when I got old, I would probably have it like they did."

It became on this record an issue for the jury whether the reason for the defendant not following the accepted practice in placing the hand in a cast was in fact based on knowledge that the plaintiff suffered from arthritis. In short, the plaintiff for purposes of reaching the jury sufficiently established malpractice causing injury, in the absence of a factor of arthritis known to the defendant. Given arthritis known to the defendant, as asserted by him, there is no expert evidence in the case that the

immobilization was not proper practice. The problem then was one of fact for the jury, and not of law for the Court.

In sustaining the appeal we have no opinion of what verdict a jury should render. The only question here is whether the plaintiff was entitled to go to the jury.

The entry will be

Appeal sustained.

In a companion action by plaintiff's husband, in which the verdict was directed for the defendant, the entry will also be

Appeal sustained.