**Omer R. DUGUAY**

v.

**Ovid F. POMERLEAU, M.D.**

Supreme Judicial Court of Maine.

Feb. 7, 1973.

Daviau & Geller by Jerome Daviau, Waterville, for plaintiff.

Robert W. O'Connor, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

In the Superior Court (Kennebec County) plaintiff sued defendant physician for alleged "malpractice" in the treatment of injuries sustained by plaintiff in the elbow area of his right arm. The case was tried before a jury which returned a verdict for the defendant. Entry of judgment on the jury verdict was promptly made (Rule 58 M.R.C.P.)

Plaintiff thereafter filed a timely motion for a new trial pursuant to Rule 59 M.R. C.P., claiming: (1) error by the presiding Justice in denying plaintiff opportunity to probe for potential bias or prejudice of jurors by voir dire questioning of prospective jurors concerning

". . . whether . . . any of them were . . . employed by or in any way closely related to anyone employed [by] or working in behalf of some insurance company";

(2) erroneous instructions to the jury by the presiding Justice because (a)

". . . in instructing the jury . . . that inferences to be drawn from facts established must point conclusively to but one such inference",

the presiding Justice in effect gave a

"criminal law rule as distinguished from the civil case rule . . .";

and (b)

"in instructing the jury that the reputation of the doctor was an issue and the failure of the Court . . . sufficiently [to] correct this instruction . . .";

the presiding Justice had "highly" prejudiced plaintiff's case.[1]

After hearing, the presiding Justice denied plaintiff's motion for a new trial. Within two weeks after the ruling plaintiff filed a notice of appeal in which he purported to appeal from the denial of the motion for a new trial rather than from the judgment for defendant.

■ Our civil rules do not expressly authorize an appeal to the Law Court from the denial of a motion for a new trial, as such. Rule 73(a) M.R.C.P. (as amended in 1962) provides, however, that:

". . . appeal shall not be dismissed because it is designated as being taken from . . . an order . . ."

denying a motion for a new trial under Rule 59 M.R.C.P.,

". . . but shall be treated as an appeal from the judgment."

Hence, we regard the present appeal from denial of the post-verdict motion for a new trial as an appeal from the judgment. (See explanation of the Amendment to Rule 73(a) M.R.C.P. as set forth in 2 Maine Civil Practice, Field, McKusick and Wroth, (2nd Ed.) at page 153).

■ Furthermore, pursuant to Rule 73(a) M.R.C.P. the running of the time for appeal from the judgment (which commences with "the entry of judgment") was "terminated" by the "timely motion" for a new trial made under Rule 59 M.R.C.P., and

"the full time for appeal . . . commences to run and is to be computed from the entry of . . . the . . . [order] denying a motion for a new trial under Rule 59."

Here, even though the notice of appeal was filed (on October 3, 1968) more than thirty days after the entry of judgment (on August 9, 1968), it was filed within thirty days after the denial of the motion for a new trial (September 20, 1968). It was, therefore, a timely notice of appeal from the judgment.

■ We consider plaintiff's initial contention that the presiding Justice erred in prohibiting plaintiff's counsel from addressing voir dire questions to prospective jurors concerning their possible relationships, directly or through relatives, with the insurance business.

In this State it has long been established that

"in cases where the wealth or poverty of a party is not a proper issue in the case, references by counsel to these matters . . . [is] improper . . .. The impropriety of mentioning insurance or the lack of it in such cases has its origin in that rule";

and, hence,

"insurance in negligence cases is immaterial, prejudicial and not admissible." St. Pierre v. Houde, Me., 269 A.2d 538, 539, 540 (1970) citing and quoting from Deschaine v. Deschaine, 153 Me. 401, 140 A.2d 746 (1958).

Further, as St. Pierre v. Houde, supra, emphasizes

---

1. The quotations are from the plaintiff's assignment of points raised on appeal.

". . . words used by counsel which by clear implication suggest the presence or absence of insurance, even though the word itself may not be used, can be violative of the rule . . . ." (269 A.2d p. 540)

Here, the insurance business was not involved in the subject-matter at issue and an insurance company was not a party to the action. Questions concerned with relationships between prospective jurors and the insurance business verge, most closely, upon an area highly suspect in terms of prejudice to defendant—i. e., suggesting information to the jury that defendant is insured. Decision of whether to permit it, therefore, must repose in the discretion of the presiding Justice, guided by the general standard that it is to be avoided unless extraordinary special circumstances require it. No such special factors appear in the *present* situation. The presiding Justice's ruling was an exercise of sound discretion, without legal error.

■■ As to the two specific facets in which plaintiff maintains that the presiding Justice gave erroneous instructions to the jury, we find it unnecessary to reach the claims of error on their merits.

Concerning each of the allegedly erroneous instructions counsel for the plaintiff had failed to make timely objection in compliance with Rule 51 M.R.C.P. Such failure generally defeats plaintiff's right to assert the claims of error on appeal. Wescott v. Vickerson, Me., 284 A.2d 902 (1971).

Even in terms of the exception extensively discussed in Johnson v. Parsons, 153 Me. 103, 135 A.2d 273 (1957) and acknowledged in Wescott v. Vickerson, supra, to survive enactment of the Rules of Civil Procedure as an exception to the requirements of Rule 51(b) M.R.C.P.,—that errors in instructions to the jury, even though no timely objection was made, will be open on appeal to prevent the serious likelihood of injustice caused by palpable

error—it becomes unnecessary for us to evaluate whether there was error in the instructions presently under attack. The record on appeal includes the entirety of the proceedings in the trial Court. As will be shown in the discussion to follow, the record establishes that the jury's verdict for defendant was the only legally warranted verdict and, hence, no injustice to plaintiff can be involved.

Viewed most favorably to plaintiff, the evidence may be regarded as adequate to authorize jury conclusions of the following facts.

In October of 1965 plaintiff, while at work, fell and sustained injuries to his right arm in the area of the elbow. X-rays taken almost immediately thereafter showed one fracture, described as "essentially undisplaced" or "with minimal displacement." The fracture was linear through the outer one-third of the radius. It was impacted upon and against the capitulum and was, therefore, basically undisturbable by motion or manipulation. Defendant physician, a general practitioner, treated plaintiff, initially, by immobilizing the fracture in a sling for a short period of time (a week or slightly more). While the area was in the sling "passive" exercise (i. e., exercise within the limits of the sling) was prescribed. When the sling was removed, plaintiff was then instructed by defendant to exercise using light weights.

Subsequently, x-rays taken in late December of 1965, and early January of 1966, disclosed in the elbow area of plaintiff's right arm a second undisplaced fracture on the inner condyle on the ulnar side of the arm (off the "coronoid process")—the bone being separated very minimally (a couple of millimeters). The original x-rays of October 1965, even though clearly depicting the same area, had shown no such second fracture.

The x-rays of December 1965 and January of 1966 were taken as the result of an incident in December of 1965 when an automobile door had struck the elbow area

of plaintiff's right arm. Because of this injury plaintiff went to see a physician, other than the defendant, who arranged for the x-rays.

Testimony given by the plaintiff would authorize a jury finding that defendant physician (1) had been informed of the second injury to plaintiff's right elbow area and also of the fact that the x-rays in December 1965 and January 1966, disclosed an additional fracture, and (2) notwithstanding such information, defendant had made no changes in the treatment program as originally prescribed for plaintiff on the basis of information disclosed by the October 1965 x-rays.

As an end-result, the elbow joint of plaintiff's right arm has been permanently impaired in its function such that the extension capacity of plaintiff's right arm is limited to a maximum of 140° with supination (extension of the arm with palm upward) restricted to approximately 50% of normal. (Pronation—extension with the palm down—is normal).

That medical treatment has produced an unsatisfactory end-result is, of course, not a legal basis for "malpractice" liability.

"The physician is not an insurer. He does not warrant favorable results." Coombs v. King, 107 Me. 376, 378, 78 A. 468 (1910) as quoted in Cyr, et al. v. Giesen, 150 Me. 248, 256, 108 A.2d 316

(1954) and Aronson v. Perkins, Me., 233 A.2d 726, 727 (1967).

To establish legal liability of defendant physician, plaintiff is required to prove both of the following propositions: (1) defendant was guilty of negligence in performing his duties as a physician because his conduct toward plaintiff had deviated from community standards of adequate medical care; and (2) such negligent treatment was the legal cause of the ultimate impairment of arm function suffered by plaintiff. Cyr v. Giesen, supra, Aronson v. Perkins, supra.

There are two specific aspects arguably supportive of a position that a jury could be rational in arriving at a decision imposing liability on defendant.

First, there was testimony from an "internist-neurologist" that the fracture disclosed by the October 1965 x-rays was of a type for which a general practitioner ". . . should consult or confer with a specialist . . .." This physician testified that in his opinion it was "bad practice" for a general practitioner "to fail to undertake such consultation." [2]

Yet, even if such testimony be held sufficient to warrant a jury's conclusion that the witness had gone beyond expressing a personal preference and had offered an expert opinion that defendant had violated community standards of treatment, thereby

---

2. Other testimony of the "internist-neurologist" that use of a cast rather than a sling would tend to afford greater immobilization is without probative value on the question of defendant's liability. First, the physician was unable to say that the use of the sling instead of the cast, regardless of the cast's tendency to cause greater immobilization, was other than a matter of judgment and would be a deviation from accepted, or recognized, community standards of treatment. Second, this same physician acknowledged that the nature of the fracture here involved required special concern to avoid too much, or long, immobilization (especially when there was little likelihood, as here, of mobility interfering with bone healing), because of the need to avoid stiffness in rotation.

Other testimony of an orthopedic specialist that he might not have started exercise with weights "quite as early as some of the other boys in our area might do" is likewise without probative value on the issue of liability. As this specialist himself emphasized, this was merely an expression of his own personal preference since he considers himself to be "a little bit conservative and old-fashioned." Moreover, rather than suggesting that defendant had violated community standards of treatment, such testimony tends to prove the contrary—that defendant's treatment was not "old-fashioned" but was more in keeping with currently prevailing attitudes.

to be negligent, plaintiff's case founders for lack of proof of legal cause. The record is barren of evidence warranting a rational conclusion that the treatment prescribed by defendant would have been found unacceptable and that a different treatment would have been introduced had an orthopedic specialist been consulted. Thus, regardless of whether defendant's omission to consult with a specialist might, in these particular circumstances, be adequate to authorize a jury finding of negligence by the defendant, there is here a total failure of proof of the second indispensible factor—that the negligence was the legal cause of the injury and damages of which plaintiff complains.

The other facet arguably supportive of an alleged liability of the defendant consists of two alternative approaches: (1) that it was reasonably open to the jury to conclude that the second fracture had been caused by the original injury and was only fortuitously undisclosed by the October 1965 x-rays, and, therefore, defendant's failure to take follow-up x-rays to ascertain the existence of the second fracture was negligence; or (2) even if the October 1965 x-rays had been an accurate reflection of the true facts, that no second fracture existed at that time but was caused by the second injury to plaintiff in December of 1965, defendant was aware of the new injury and the new fracture and his failure to change the treatment of plaintiff to accommodate to the effects of the second fracture was negligence.

Both of these hypotheses, fail, however, to warrant a rational jury conclusion that defendant be held liable. Again, as before,

this conclusion is required because the evidence fails totally to provide a rational foundation for a conclusion of legal cause. There is no evidence to suggest that the nature of the second fracture necessitated, or rendered appropriate, treatment in any respect different from that prescribed by defendant after the sling had been removed in late October or early November of 1965.[3]

On the totality of the evidence taken most favorably to the plaintiff the verdict for defendant here returned was thus the only one legally possible.

" . . . [A] plaintiff . . . not entitled as of right to a jury determination, . . . cannot . . . complain of alleged errors in the instructions given by the presiding justice." Wiggin v. Sanborn, 161 Me. 175, 181, 210 A.2d 38, 41 (1965).

A fortiori, the appeal of plaintiff must fail, when, as here, the only basis on which plaintiff can claim a right to appellate scrutiny of the alleged errors in the instructions to the jury is that they caused him injustice.

The entry must be:

Appeal denied. Counsel expressly stipulated during oral argument that defendant shall be responsible for the costs of the stenographic transcript of the trial proceedings as well as of the preparation of the entire record on appeal. Accordingly, the Clerk of this Court shall exclude such expenses from the costs to be taxed, under Rule 76 M.R.C.P., against the plaintiff as the unsuccessful party.

---

3. It should be noted that relative to the second hypothesis above, this same line of reasoning would establish not only a lack of legal cause but also a lack of negligence. It surely cannot be negligence to fail to change treatment when no change in treatment is reasonably indicated.