**Elaine W. HAUSER**

v.

**H.N. BHATNAGER.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1988.
Decided Feb. 25, 1988.

Alton C. Stevens (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiff.

William D. Robitzek (orally), Paul F. Macri, Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, H.N. Bhatnager, a plastic surgeon, appeals the judgment of the Superior Court, Kennebec County, entered in favor of the plaintiff, Elaine W. Hauser, in her action against the defendant for medical malpractice, lack of informed consent,

breach of warranty and fraud arising out of an eyebrow lift operation. On appeal, he contends, inter alia, that the trial court erred in (1) allowing testimony of an unqualified expert witness, (2) denying his motions for judgment notwithstanding the verdict (N.O.V.) and for a new trial, (3) failing by direction of verdict or jury instruction to eliminate permanent impairment[1] as an element of plaintiff's damages, and (4) failing to give his requested instruction on witness credibility. Finding no merit in any of defendant's claims of error, we affirm the judgment.

## I.

On March 5, 1981, Elaine W. Hauser consulted Dr. Bhatnager, a plastic surgeon in Bangor, concerning the asymmetry of her eyebrows. Mrs. Hauser's right eyebrow was slightly lower than the left and Dr. Bhatnager recommended a right eyebrow lift to make them more symmetrical. The operation was performed in Dr. Bhatnager's office on March 9, 1981, under local anesthetic. Mrs. Hauser returned to the office for a follow-up visit on March 14, 1981, and was told by Dr. Bhatnager that the wound was healing well. A second follow-up appointment was scheduled for March 19, 1981, but Mrs. Hauser did not keep the appointment. Instead, she and a cousin traveled to California. On April 3, 1981, after arriving in California, Mrs. Hauser went to see Dr. Norton Hering, a general surgeon. During that visit, Mrs. Hauser complained of abnormal sensations (itching, numbness), on her forehead in the area of the wound. Dr. Hering identified the condition as parasthesia and noted its existence. Dr. Hering removed stitches from the plaintiff's forehead and found the scar to be a reasonably fine line and healing well. When Dr. Hering next saw the plaintiff in September 1982, however, the scar had become depressed, about a quarter of an inch in width, and brownish in color—all of which the doctor characterized as "cosmetically objectionable."

The plaintiff filed her original complaint against Dr. Bhatnager on June 3, 1983, and amended it twice on June 8, 1983 and February 19, 1986. The resulting amended complaint alleged medical malpractice, lack of informed consent, breach of express warranty, and fraud. A jury trial was held in Superior Court on December 8–11, 1986. At the close of the evidence, both parties moved for a directed verdict on all four counts, and the defendant moved for a directed verdict on the additional issue of permanent impairment. A directed verdict was granted to the defendant only on the fraud count. Following the court's instructions to the jury, the defendant raised some objections and recommended alternative or additional language. The court noted the recommendations, but did not act on them. The jury returned a verdict for the plaintiff on all three remaining counts and a $10,000 judgment was eventually entered by the court. The court denied the defendant's subsequent motions for judgment N.O.V. and for a new trial, and this appeal by the defendant followed.

## II.

The first issue raised by the defendant on appeal is whether the presiding justice erred in allowing Dr. Hering to testify as an expert witness. The defendant contends that Dr. Hering lacked the requisite training and experience to give opinions as to the standards applicable to plastic surgeons or whether Dr. Bhatnager negligently performed the eyebrow lift procedure on the plaintiff. Whether a witness should be allowed to testify as an expert in a medical malpractice case is a matter left to the "wide discretion" of the trial justice. *Caron v. Pratt*, 336 A.2d 856, 859 (Me.1975). Because the court in the present case determined that Dr. Hering's experience in elective cosmetic plastic surgery, and eyebrow lifts in particular, was indeed limited, it declined to allow Dr. Hering to testify on the issue of informed consent. However, on the basis of Dr Hering's experience in non-elective plastic surgery and scar

---

1. We assume the parties use this term in the traumatic tort sense of "permanent injury" rather than the Workers' Compensation Act connotation of a percentage of permanent disability.

management, the court did allow the doctor to testify as a general surgeon.

The defendant essentially argues that as a general surgeon Dr. Hering should not have been allowed to testify concerning the defendant's treatment of the plaintiff as a plastic surgeon. We stated in *Taylor v. Hill,* 464 A.2d 938 (Me.1983):

> [A] member of one specialty may testify to the standard of care applicable to another specialty as long as the witness is familiar with the standard of care and qualified to testify about it.
>
> . . . .
>
> Moreover, "the diagnosis and treatment of some medical problems may be of concern to doctors of different specialties, and in an area of concurrent expertise, a common standard of care may be shared."

*Id.* at 942 (citations omitted).

■ Dr. Hering did not testify whether the eyebrow lift procedure used by the defendant was the proper technique to be used on the plaintiff—information that might be within the expertise of only a plastic surgeon. Rather, Dr. Hering testified concerning more general surgical standards such as whether nerves in the forehead should be protected from severance during surgery, the proper closure of forehead wounds, and whether the plaintiff's parasthesia was caused by the defendant's negligence during surgery. Thus, although Dr. Hering might not been qualified to give testimony regarding the specific surgical technique involved in the eyebrow lift performed in the instant case, he was competent to testify whether Dr. Bhatnager followed proper general surgical procedures. Consequently, the court acted well within its discretion in allowing Dr. Hering's expert testimony.

■ The defendant next argues that judgment on the negligence count should be vacated because of insufficient evidence of causation and because of the jury's failure to find some comparative negligence on the part of the plaintiff. "We will not

disturb a jury verdict that is supported by any credible evidence if the jury could rationally reach the result it did." *True v. Ladner,* 513 A.2d 257, 265 (Me.1986). In somewhat different language setting forth the standard of review, we said "the verdict must be sustained if any credible evidence, and all justifiable inferences drawn from such evidence, viewed in the light most favorable to the plaintiff, support the verdict." *Redlon's Inc. v. Gilman, Inc.,* 485 A.2d 661, 662 (Me.1984). In the case before us, Dr. Hering's expert testimony provided the jury with credible evidence from which it could conclude that Dr. Bhatnager caused the plaintiff's injuries. For example, Dr. Hering testified that the plaintiff's parasthesia in her forehead was caused by the defendant's failure to protect the plaintiff's supraorbital nerve during the operation, and her widened and depressed scar was caused by the defendant's improper stitching of the wound. Since the jury's verdict on the issue of negligence is supported by credible evidence, we leave it undisturbed.

The defendant contends that since the plaintiff failed to keep her second follow-up appointment with him after her eyebrow lift operation, the jury was compelled to find plaintiff guilty in some degree of comparative negligence. The jury was free to conclude that the plaintiff's failure to keep the appointment did not cause or contribute to the plaintiff's scarring or nerve damage and therefore was not required to find any causative negligence on her part. The jury could rationally have found from the testimony presented that the plaintiff's injuries were caused exclusively by the defendant's surgical errors and not by the plaintiff's failure to keep her appointment. Since the jury's findings on the issue of causative fault are supported by credible evidence, its verdict on the issue of negligence must stand.[2]

■ The defendant next argues that the plaintiff's claim for permanent impairment was not supported by evidence at trial and

---

2. Because we affirm the judgment as to the issue of negligence, we need not address numerous other arguments raised by the defendant concerning the issues of informed consent and express warranty.

therefore the court erred in denying defendant's motion for a directed verdict and request for a jury instruction on that issue. Although Dr. Bhatnager testified that the plaintiff would be left with a permanent scar as a result of the surgery, the defendant is basically correct that the record contains no testimonial evidence expressly stating that she is permanently impaired. However, the jury could have reasonably inferred from the evidence presented that the plaintiff did sustain a permanent impairment. The fact that the plaintiff had parasthesia and a widened, depressed scar at the time of trial, nearly six years after the operation, is a sufficient evidentiary basis to support a finding that she sustained an injury of a permanent nature. Also indicative of permanent impairment is the testimony that revision surgery would be required to improve the scar's appearance. Taken in its entirety, the testimony at trial, together with plaintiff's in-court physical appearance, provided sufficient evidence of permanent impairment to support the court's denial of defendant's motion for a directed verdict and request for jury instruction on that issue.

■ Finally, the defendant maintains that the presiding justice erred in his instructions to the jury on the issue of witness credibility. The defendant argues that the court erred in failing to give the defendant's requested instruction "that the jury may reject the entire testimony of a witness who is shown knowingly to have testified falsely as to any material matter." The court did instruct the jury concerning the credibility of witnesses and essentially covered the issue that the defendant requested. Although the court is required to give instructions on the law applicable to the case, it is not bound to give them in the language requested by counsel. *Isaacson v. Husson College*, 332 A.2d 757, 762 (Me. 1975).

The entry is:

Judgment affirmed.

All concurring.