## Ronald R. LEVESQUE

v.

## William CHAN, et al.

Supreme Judicial Court of Maine.

Argued Nov. 15, 1989.
Decided Jan. 29, 1990.

James F. Freeley, Jr. (orally), Freeley & Freeley, Boston, Mass., John E. Harrington, Jr., Winterport, for plaintiff.

Daniel A. Pileggi (orally), George Singal, Gross, Minsky, Mogul & Singal, Bangor, Lewis Vafiades, Amy L. Faircloth (orally), Vafiades, Brountas & Kominsky, Bangor, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

Plaintiff Ronald Levesque appeals from an order of the Superior Court (Aroostook County, *Pierson, J.*) granting summary judgment in a medical malpractice action in favor of defendants, Dr. William Chan and Dr. Francis Chan. The Superior Court did not consider the medical evidence offered in opposition to defendants' motions on the ground that plaintiff's medical witness was not competent to express an opinion on the standard of care. Plaintiff argues on appeal that a genuine issue of fact as to competence and the appropriate standard of care was presented. We agree and we vacate the judgments.

The facts as developed at the hearing on summary judgment may be summarized as follows: In 1982, plaintiff cut his right wrist in an accident at his home in St. Leonard, New Brunswick. Friends took him immediately to the hospital in Van Buren where the doctor on duty in the emergency room, Dr. William Chan ("William"), examined and treated the injury. Two days later, William referred plaintiff to an orthopedic surgeon, Dr. Francis Chan ("Francis" [1]). Francis diagnosed the injury as a carpal tunnel syndrome. Both doctors assured plaintiff that no nerve or tendon had been "cut" in the wrist. Despite these assurances, the injury failed to improve within a period of six weeks and plaintiff asked Francis to refer him to another specialist. Francis referred him to Dr. Jean Labelle, a plastic and hand surgeon in South Portland. When plaintiff saw La-

---

1. Francis died prior to the commencement of this action. The suit was filed against Jeanine Chan as personal representative of Francis's estate.

belle more than six weeks after the injury, Labelle immediately diagnosed a partial laceration to the median nerve and performed microscopic surgery to repair it the following day.

After surgery, plaintiff continued to experience numbness, weakness and discomfort in his hand and ultimately filed suit against William and the personal representative of Francis's estate in 1984. In his complaint he alleged that William and Francis had improperly failed to diagnose and treat the severed median nerve. After the completion of discovery, both defendants moved for summary judgment. The Superior Court granted defendants' motions and plaintiff appeals.

On appeal, we examine the entire record to determine whether it supports the Superior Court's conclusion that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. *See* M.R.Civ.P. 56(c). We view all evidence "in the light most favorable to the party against whom the motion has been granted and accord that party the full benefit of all favorable inferences that may be drawn from the evidence." *Lidstone v. Green*, 469 A.2d 843, 845 (Me. 1983).

The Superior Court ruled that the deposition and affidavit submitted by plaintiff's expert, Dr. Joseph G. Cyr, did not establish that Cyr was qualified to express an expert opinion on the applicable standard of care.[2] Without his testimony, the Superior Court concluded that plaintiff had not generated any factual issue concerning the requisite elements of his medical malpractice claim, *see Forbes v. Osteopathic Hospital of Maine*, 552 A.2d 16, 17 (Me.1988) ("ordinarily, a plaintiff can discharge his burden of proof for a claim of negligent medical care only by expert medical testimony establishing the appropriate standard of medical care, that the defendant departed from the standard and that the negligent conduct proximately caused the plaintiff's

injury"), and that defendants were entitled to judgment as a matter of law.

 Whether a particular witness is qualified to testify as an expert is a question of fact. *See Caron v. Pratt*, 336 A.2d 856, 859 (Me.1975), quoting *Fayette v. Chesterville*, 77 Me. 28, 33 (1885). Although the justice presiding at trial will have "wide discretion" in determining whether or not to allow any witness to testify as an expert, *see Caron v. Pratt*, 336 A.2d at 859, on a motion for summary judgment the sole function of the presiding justice is to determine whether there is a disputed factual issue, not to decide such an issue if found to exist. *See* Field, McKusick & Wroth, *Maine Civil Practice* § 56.1 (1970).

According plaintiff the benefit of all favorable inferences that may be drawn from the evidence, we conclude that the witness was qualified to render an opinion on the standards of care applicable to both William and Francis. Dr. Cyr has extensive experience and qualifications as a general practitioner, which is William's field of practice. He has been a practicing physician for almost forty years. Although his practice is in Canada, he has practiced in several American states, and he testified that the standards of care in this country are identical to the standards observed in Canada. *See Roberts v. Tardif*, 417 A.2d 444, 451 (Me.1980) (medical specialists held to national standard of care).

Dr. Cyr admitted having no expertise or experience in Francis's specialty of orthopedic surgery. *See Taylor v. Hill*, 464 A.2d 938, 942 (Me.1983) (a member of one specialty may testify to the standard of care applicable to another specialty provided he is familiar with the standard of care and qualified to testify about it). In fact, he did not testify directly about the standard of care for an orthopedic surgeon, but asserted that any doctor, regardless of specialty or experience, must look for nerve

---

**2.** The parties focus quite narrowly on the technical competence of Cyr's affidavit. Because the affidavit did not conform to the requirements of Rule 56(e), the Superior Court refused to consider it. However, all information expressed in the two page affidavit is also expressed in the 130+ page transcript of Cyr's deposition. Therefore, the affidavit was not essential to the Superior Court's decision and will not be addressed here.

and tendon damage with this type of injury.[3] His testimony, considered in the light most favorable to the plaintiff, could rationally support the factual conclusion that any physician in any specialty had a duty to diagnose the severed median nerve and to immediately send the patient to a plastic surgeon.

■ Because Dr. Cyr's testimony relates to any doctor in any specialty, the Superior Court could only have granted summary judgment by concluding that he had either incorrectly stated the applicable standard of care or by discounting his testimony. Such an assessment of the weight or credibility to be given evidence is impermissible on a motion for summary judgment. *See Emerson v. Sweet*, 432 A.2d 784, 785 (Me. 1981), *citing* 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2726 (1973). Whether or not his testimony accurately reflects the standard of care applicable to the current situation is a question of fact to be resolved by the trier of fact.

Defendant Francis Chan argues on appeal that the judgment of the Superior Court can be upheld on the alternate ground that plaintiff failed to "demonstrate that he was damaged in any way by the delay in recieving surgical treatment". In his deposition, Dr. Labelle testified that, all other things being equal, "the earlier the repair the better". In general, he stated he would not delay the repair but he could not conclusively state that the delay harmed plaintiff in this case. When questioned, Dr. Cyr disagreed with defense counsel's assertion that delay did not have a negative effect on the results of surgery. In fact, he testified that plaintiff would have had significantly better use of his hand if the surgery had been performed within a few days. A genuine issue of material fact is presented. Summary judgment is improper when contradictory inferences may be drawn from the evidence before the court.

The entry is:

Judgments vacated.

McKUSICK, C.J., and ROBERTS, GLASSMAN and CLIFFORD, JJ., concur.

HORNBY, Justice, concurring.

I concur in much of the Court's opinion but resist the implication that summary judgment is the villain here and that all might have been well if only the Superior Court had delayed its ruling on Dr. Cyr's testimony until trial. It is undisputed that without a medical expert the plaintiff could not survive a motion for directed verdict. *See Forbes v. Osteopathic Hosp. of Maine, Inc.*, 552 A.2d 16, 17 (Me.1988). Thus, it was consistent with judicial economy to consider the availability of a competent expert at the summary judgment stage. In doing so, the Superior Court did not improperly decide any factual issues or weigh testimony. It merely ruled that Dr. Cyr, as a general practitioner, was not qualified to give expert testimony on the standard of care. That ruling was error whether made in limine or at trial, because even as a general practitioner Dr. Cyr could testify that any doctor, regardless of training, must reach a certain minimum level of care that was missing here. Since that is the testimony the plaintiff needs, he does have a qualified medical expert. Summary judgment must be vacated on that account, not because the trial court resolved factual issues or weighed testimony.

3. Cyr testified that William "pretty obviously didn't look for the scarred—not the scarred but the abrased tendons, he did not look for the median nerve and that's the first thing we have to do, whether I'm a GP or I'm out of school or a resident in surgery or whatever. I mean, that's the first thing we have to—that's what we're trained to do." Cyr then stated that appropriate care in this situation required that the treating physician send Levesque "to the first plastic surgeon—either in Fredericton, New Brunswick or Portland" for the nerve repair operation.