Carol McLAUGHLIN

v.

Vincente L. SY.

Supreme Judicial Court of Maine.

Argued March 19, 1991.
Decided April 11, 1991.

---

Peter B. Bickerman (orally), Lipman & Katz, Augusta, for plaintiff.

Valerie Stanfill (orally), Jack H. Simmons, Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

In this medical malpractice case, Carol McLaughlin appeals from a judgment in the Superior Court (Somerset County, *Beaulieu, J.*) following a jury verdict that the defendant, Dr. Vincente L. Sy, a general practitioner in Skowhegan, was not negligent, or that his negligence was not a proximate cause of the death of her husband, James McLaughlin. The principal issue in this appeal is whether the court in effect instructed the jury in accordance with the improper "locality rule." We affirm.

On the evidence at trial, the jury could have found the following facts.[1] James McLaughlin arrived at his summer home in North Anson on the evening of June 23, 1987, returning from a conference in Connecticut. He complained of a sore throat and felt he was coming down with something. The next morning he felt worse. After trying a local clinic, Mrs. McLaughlin called Dr. Sy's office and learned that Dr. Sy was making rounds at Redington–Fairview General Hospital in Skowhegan and would see her husband at the emergency room there. She drove him to Skowhegan.

Upon arrival at about 9:00 A.M., Mr. McLaughlin was initially seen by a triage nurse. The nurse's initial examination notes stated:

To E.R. *c* [with] severe sore throat which came on quickly last *noc* [night]. Having chills, fever. Difficulty swallowing,

---

1. On appeal from a jury verdict, we take the facts, as the jury could rationally have found them, in the manner most strongly supporting the jury's verdict. *See Guilford Yacht Club Ass'n. Inc. v. Northeast Dredging, Inc.,* 438 A.2d 478, 481 (Me.1981).

can't speak—skin hot, dry—color grayish—

The nurse also recorded that he had a temperature of 103.2 degrees F., a pulse of 112, respirations of 16, and blood pressure of 110/70. Despite the notation "can't speak," there was testimony that Mr. McLaughlin was able to speak in a whisper. He used a tissue to wipe saliva from his face because of his difficulty swallowing.

Dr. Sy examined Mr. McLaughlin by feeling his neck, looking into his throat using a tongue depressor, and listening to his breathing with a stethoscope; he also used a swab to take a sample for a "strep screen." After the result of the strep screen came back negative, Dr. Sy tentatively diagnosed an upper respiratory tract infection. He prescribed erythromycin and benadryl; he prescribed only a three-day supply of erythromycin in order to encourage McLaughlin to check back with him so that he could see if the antibiotic was effective. Both Dr. Sy and the nurse told the McLaughlins to call back or return if Mr. McLaughlin's condition worsened.

The McLaughlins filled the prescription and Mr. McLaughlin took the pills. They then returned home. About noon, Mr. McLaughlin's condition worsened; he began having difficulty breathing and could only rest sitting up. Mrs. McLaughlin urged him to return to the hospital but he refused. She went out shopping and returned about an hour later. At that point, Mr. McLaughlin was unable to eat ice cream. Mrs. McLaughlin again urged him to return to the hospital but he continued to refuse, saying he would try another dose of the erythromycin. He swallowed the pill with difficulty and could not swallow the benadryl. At some time around 2:30 P.M. his breathing became noisy. He seemed to be gasping for air, and was unable to talk. Mrs. McLaughlin's parents visited briefly and joined Mrs. McLaughlin in trying to convince him to return to the hospital. He finally agreed, at around 3:30 P.M.

As he was getting into the car, he pointed to his throat and indicated distress. Mrs. McLaughlin ran back into the house and called the ambulance. He followed her into the house, where he collapsed and died.

The ambulance crew's attempts at resuscitation were unsuccessful, and Mr. McLaughlin was pronounced dead on arrival at Redington–Fairview General Hospital. An autopsy revealed that he had died from acute epiglottitis, a condition, rare in adults, wherein the epiglottis, the flap of cartilage that hangs over the windpipe and protects against aspiration of food and liquids, becomes so swollen that it is sucked into the larynx, obstructing the airway.

Mrs. McLaughlin initially served a Notice of Claim on Dr. Sy and the matter was referred to a medical malpractice screening panel. The parties subsequently waived that procedure and proceeded to litigate. Mrs. McLaughlin sued Dr. Sy in the Superior Court, both as her husband's representative in a wrongful death action and on her own behalf for negligent infliction of emotional distress.

At trial, the plaintiff's medical experts, Dr. Brooks and Dr. Teplin, did not fault Dr. Sy's failure to diagnose acute epiglottitis during the morning emergency room visit. They testified, however, that the applicable standard of care would have been for Dr. Sy to perform additional tests such as a lateral neck X-ray, and to give Mr. McLaughlin more detailed instructions. The defendant's medical experts, Dr. Baker and Dr. Carter, testified that Dr. Sy complied with the applicable standard of care by telling Mr. McLaughlin to call or return if his condition worsened.

The case was submitted to the jury on a special verdict form agreed to by the parties. The jury answered "No" to the first question, "Was Defendant Vincente Sy negligent, and was the Defendant's negligence a proximate cause of the Plaintiff's injuries?" The jury therefore did not reach any of the other questions concerning comparative negligence and damages.

Mrs. McLaughlin appealed. Subsequently, she filed two Motions for Clarification and Correction of the Record in the Superior Court pursuant to M.R.Civ.P. 74(e). One of these motions, to incorporate in the record her Proposed Jury Instructions,

which had been presented to the court during trial, was granted without objection. The other motion, which alleged the existence of various unrecorded proceedings, was denied after a hearing.

### I.

■ Notwithstanding the Superior Court's denial of her Motion for Clarification and Correction of the Record, Mrs. McLaughlin continues to argue matters that do not appear in the record. "[S]uch *sua sponte* supplementation of the record on appeal is not permitted and must be disregarded." *National Council on Compensation Insurance v. Superintendent of Insurance,* 481 A.2d 775, 781 (Me.1984).

> It is clear ... that [M.R.Civ.P. 74(e)] is intended to provide a mechanism for rectification of a properly settled record. It is not intended to reach a situation in which the "omission" is of any record of facts and in which the "differences" between the parties pertain to a statement of evidence ... which is acceptable to only the appellant. The wording of 74(e) suggests that the rule offers a procedure for "Correction or Modification of the Record," not creation of the record.

*Estate of Everett,* 460 A.2d 1026, 1029 (Me. 1983) (holding appeal frivolous, where based on "facts" not of record).

We therefore reject Mrs. McLaughlin's arguments to the extent they are based on material that does not appear in the record. Her Motion for Clarification and Correction of the Record lacked any factual support whatever, even an affidavit stating that unrecorded proceedings had taken place. Dr. Sy's attorney controverted the assertion; the court remembered no such proceedings.[2] Mrs. McLaughlin has not even challenged the court's denial of her motion on this appeal; instead, she has proceeded as if her motion had been granted. We disapprove of such self-help.

### II.

■ Mrs. McLaughlin contends on appeal that the court abused its discretion in excluding the deposition testimony of Dr. Lawrence Baker, which she would have used in cross-examination. The court granted Dr. Sy's motion *in limine* and excluded the deposition testimony. She now asserts that she wished to use that testimony to undercut Dr. Baker's trial testimony that the standard of care for a physician confronted with a patient presenting Mr. McLaughlin's symptoms would be to advise him either to call or return to the hospital should his condition worsen.

Mrs. McLaughlin's attorney now alleges that there was an argument in chambers on the motion *in limine* that was not recorded and does not appear in the transcript, and also that he again offered the deposition testimony during cross-examination of Dr. Baker, in a sidebar conference that was not recorded and does not appear in the transcript. Although the parties agree that, in the chambers conference, the court granted the motion *in limine,* the record does not disclose that any offer of proof was ever made as to what the deposition testimony would have shown. Nor does the record state for what purpose the testimony would have been offered, under what evidentiary rule the plaintiff argued it would have been admissible, or the court's basis for excluding it.

Accordingly, we review only for obvious error. *See Hull v. L. & A. Montagnard Social Club, Inc.,* 498 A.2d 597, 598 (Me. 1985); *State v. Howard,* 405 A.2d 206, 210 (Me.1979). We find none.

### III.

■ The court's instruction on the standard of care in a medical malpractice case referred to "standards of physicians performing similar services *in the community*" and to "courses of conduct recognized and accepted as reasonable by physicians

**2.** The court reporter wrote a letter to both counsel that was admitted as an exhibit during the hearing on the Motion for Clarification and Correction of the Record. The letter is at best ambiguous, stating that "any other matters either of you feel might have been left out never was requested to be on the record to begin with."

*in the community."* (Emphasis added.) Mrs. McLaughlin, having preserved her objection, argues on appeal that this instruction improperly incorporated the "locality rule," and was therefore erroneous.

Mrs. McLaughlin is correct that the locality rule is not the law in Maine. *See Taylor v. Hill,* 464 A.2d 938, 942 n. 1 (Me.1983) (rejecting locality rule; declining to consider "what role, if any, geography will play with regard to the standard of care applicable to non-specialists"); *Roberts v. Tardif,* 417 A.2d 444, 451–52 (Me.1980) (rejecting strict locality rule; no error in instruction that jury "compare defendant's conduct to that of reasonable and prudent physicians in the defendant's specialty under like circumstances," including "circumstances of time, place, and person"). Contrary to her assertion, however, the instruction in question is not a locality rule instruction.

We have repeatedly approved of jury instructions that held a physician to the standard of care of an ordinarily competent physician under like conditions. *E.g., Roberts,* 417 A.2d at 451 ("under like circumstances"); *Josselyn v. Dearborn,* 143 Me. 328, 340, 62 A.2d 174 (1948) ("under like conditions"). Locality is, at most, a factor in the overall circumstances. For example, in *Josselyn* there was evidence that neither penicillin nor blood tests were available to an osteopath practicing in Lubec in 1945, but we held that a "like conditions" instruction "was sufficiently broad to cover the degree of skill and care required of a physician and surgeon practicing in the locality of Lubec." 143 Me. at 335, 336, 340–341, 62 A.2d 174.

We have also frequently used terms such as "community standards," although, as noted in *Roberts,* 417 A.2d at 451, always in dicta. *See, e.g., Caron v. Pratt,* 336 A.2d 856, 859 (Me.1975) ("community standards of proper medical treatment"); *Downer v. Veilleux,* 322 A.2d 82, 91 (Me. 1974) (standard for informed-consent disclosure depends on "standards of the medical

community to which the physician belongs"); *Duguay v. Pomerleau,* 299 A.2d 914, 917 (Me.1973) ("community standards of adequate medical care"); *Aronson v. Perkins,* 233 A.2d 726, 728 (Me.1967) ("standard of practice of an osteopathic physician in the community"); *Cyr v. Giesen,* 150 Me. 248, 252, 108 A.2d 316 (1954) (quoting 70 C.J.S. *Physicians and Surgeons* § 62; "prevailing standard of skill and learning in the locality"). As the opinion in *Roberts* makes clear, however, this language does not embody the locality rule.

Instead, such language in past Maine cases has been considered interchangeable with the concept of "in like situation." That the formulations were long considered synonymous is particularly clear in *Caron,* 336 A.2d at 859, where the phrases "community standards" and "in like situation" were both used to express the relevant standard of care, and in *Cyr,* 150 Me. at 252, 255, 108 A.2d 316, where "in the locality" was used together with "in like situation." Thus, in context, the instruction in this case was not a locality rule instruction, but one directed to determining the standard of care under all the relevant circumstances. *Cf. Restatement (Second) of Torts* § 299A, comment g (1965) ("in similar communities" does not imply locality rule). Such an instruction is not erroneous. *Roberts,* 417 A.2d at 451.

■ That is not to say that the instruction is above criticism. The use of the phrase "in the community" to express the concept of "under all the relevant circumstances" clearly has some potential to confuse a jury. But there was no testimony in this case that differentiated standards of care in Skowhegan from any other national or generally applicable standard; to the contrary, the experts all testified that Dr. Sy's duty of care was that of physicians generally. Neither party argued the point.[3] Thus, even to the extent the instruction at issue could potentially confuse

---

3. Mrs. McLaughlin contends on appeal that Dr. Sy improperly testified that he had reviewed peer-review cases maintained by the hospital, and suggests that his testimony could have led the jury to think in terms of a "community

standard" governing the standard of care in Skowhegan. The court, however, excluded that testimony and granted Mrs. McLaughlin's motion to strike.

a jury in some cases, in this case there could have been no such confusion. *See Eckenrode v. Heritage Management Corp.,* 480 A.2d 759, 763 (Me.1984) (harmless error, unless instruction both legally incorrect and prejudicial in a particular case).

### IV.

Mrs. McLaughlin raises various other objections to the jury instructions for the first time on appeal. Reviewing those objections, as we must, only for obvious error, we find no reason to disturb the jury verdict.

The entry is:

Judgment affirmed.

All concurring.