STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

Oct 25  1 47 PH '00

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-284
N/M — Cum-10/25/2000

OCT 31 2000

ROBERT ZUTAUT and
MARY ZUTAUT,

  Plaintiffs

 vs.           JUDGMENT

BRUCE V. GALLUP, D.M.D.,

  Defendant

Jury-waived trial on the plaintiffs' complaint was held on 10/17/00. All parties appeared with counsel.

On 5/5/98, the plaintiff Robert Zutaut saw the defendant with regard to a lump on the plaintiff's left jaw. A CT scan revealed a likely calcified lymph node as the mass. As the defendant palpated the lump while Mr. Zutaut opened and closed his jaw, the lump moved, which suggested to the defendant that the mass was either attached to or emanated from the temporomandibular joint. In fact, the mass originated in the parotid gland and adhered to the temporomandibular joint.

On 6/1/98, the defendant performed surgery on Mr. Zutaut to remove the lump in the left preauricular area. During the surgery, at least the zygomatic and temporo branches of the facial nerve were dissected. A partially calcified cyst and left parotid gland tissue were removed.

The defendant did not see the parotid gland or the facial nerves during the surgery. He thought the parotid gland was a safe plane away from where he thought the lump was located.

Most masses in the preauricular area are parotid tumors. Based on the CT scan, the defendant should have been aware of potential parotid gland involvement. The standard of care required identification of the facial nerves prior to any removal of tissue. That standard was breached by the defendant because he incised directly into the soft tissue and circled the mass without consideration of the location of the nerves.

The defendant, an oral surgeon, agreed that he was not trained or experienced in parotid gland surgery. If he had known that the surgery on Mr. Zutaut would involve that gland, the defendant would have referred the patient to another, qualified doctor.

The defendant argues that although this surgery was beyond his training and expertise as an oral surgeon, the focus must be on the standard of care of an oral surgeon. The standard of care to be observed by the person performing this surgery did not vary depending on the physician's specialty. Any physician in any specialty had a duty to identify the facial nerves and ensure that they were not cut. See Levesque v. Chan, 569 A.2d 600, 601-02 (Me. 1990); Hauser v. Bhatnager, 537 A.2d 599, 600-01 (Me. 1988).

After the surgery, Mr. Zutaut was referred to Dr. Berlin, a board certified ophthalmologist, by Dr. Guiseley, an optometrist. On August 28, 1998, Dr. Berlin did a lid tightening procedure in order to put the lid back into position against the cornea and to reduce the space between the upper and lower lid in order to reduce drying of the cornea.

2

On September 4, 1998, Dr. Berlin referred Mr. Zutaut to Dr. Antoniou, an otolaryngology consultant, because of Dr. Berlin's concerns about Mr. Zutaut's facial nerve function. Dr. Antoniou determined, based in part on an ENG study done by Dr. Collins, that there was a complete transection of the upper facial nerves.

On 10/2/98, Dr. Bonawitz, a board certified plastic surgeon, performed surgery on Mr. Zutaut in order to repair the nerves, either through anastomosing or grafting. Dr. Bonawitz was unable to sew nerves together because the nerve branches ended in a mass of scar tissue and could not be reattached. Nerves from Mr. Zutaut's forearm were used in an attempt to graft the facial nerves. This procedure resulted in a permanent loss of sensation in his arm. The situation confronting Dr. Bonawitz was the result of the facial nerves having been cut as opposed to having been stretched.

Although the studies after Dr. Bonawitz's surgery suggest that the nerve graft had been done in a correct anatomical location, it did not appear that the surgery resulted in much functional improvement. Dr. Bonawitz discussed with Mr. Zutaut the possibility of additional surgery, although Dr. Bonawitz did not believe that that surgery would remedy the problems. The plaintiffs determined not to go forward with that surgery.

In January, 2000, Dr. Kahn, Dr. Berlin's partner, performed another surgery on Mr. Zutaut during which the doctor inserted a gold weight into the left upper eyelid. The purpose of the surgery was to add weight to the eyelid down to give better protection, particularly at night.

Mr. Zutaut's medical bills proximately caused by the defendant's surgery total $54,072.74 to date. Mr. Zutaut spends approximately $253.02 per month on ointments, eye drops, eye patches and covers, and medicine. These expenses are ongoing and the use of the items listed on plaintiff's exhibit 9A is reasonable. Mr. Zutaut's life expectancy is 22.6 years.

Mr. Zutaut experienced significant pain, swelling, bleeding, and bruising immediately after the defendant's surgery. Since that time, he continues to suffer with a left eye which will not close and which, in his words, is a "burning and painful situation." He is unable to elevate his left brow and there is numbness on the left side of his face. He was also drooling but that has improved. His eye feels as though sand or gravel has been thrown into it. The burning sensation was severe enough to require the plaintiff's family doctor, Dr. Van Mourik, to tape Mr. Zutaut's eye closed for one month in February, 1999. Periodically, the plaintiff's eye swells and requires hot, wet compresses.

His inability to close his eye affects all daily activities. The plaintiff can not see well and, therefore, has difficulty reading and driving. Water from a shower or from swimming burns his eye, as does wind, the sun, pollen, dust, and air conditioning. Anything that may result in a substances hitting his eye is to be avoided, including using a snowblower and cooking. He can no longer hunt or do mechanical work.

Perhaps the biggest problem the plaintiff faces is his inability to sleep. He takes sleeping pills on a daily basis, as well as Percodan for severe headaches. His

4

eye continues to tear, swell, and become red and is full of mucus each morning when he awakes. Although the lubricants and drops that the plaintiff takes to keep his eye moist provide some relief, they also affect his ability to see clearly.

Plaintiff Mary Zutaut tries to do what she can for her husband whom she describes as having had a hard time through all of this. His irritability, resulting from his inability to sleep, is sometimes directed at her. She doesn't do much about that because she knows he is suffering. She is tolerant.

The injuries suffered by Mr. Zutaut as a result of the defendant's surgery are permanent and his condition will not improve. The goal, in fact, is to try to manage the problems in order to avoid significant deterioration of the condition of his eye.

The entry is

> Judgment is entered in favor of the Plaintiff Robert Zutaut and against the Defendant on the Plaintiffs' Complaint in the amount of $600,000.00 plus interest and costs.

> Judgment is entered in favor of the Plaintiff Mary Zutaut and against the Defendant on the Plaintiffs' Complaint in the amount of $50,000.00 plus interest and costs.

Date: October 25, 2000

Nancy Mills
Justice, Superior Court

5

Date Filed ___05-03-00___ ___CUMBERLAND___ Docket No. ___CV 00-284___
County

Action ___PERSONAL INJURY___

ROBERT ZUTAUT and                              BRUCE V. GALLUP, DMD
MARY M. ZUTAUT

DONALD L. CARBRECHT
LAW LIBRARY

OCT 31 2000

vs.

Plaintiff's Attorney
RANDALL E. SMITH ESQ   282-1527
PO BOX 1179, SACO ME 04072

Defendant's Attorney
  DAVID C. NORMAN, ESQ.
  P.O. BOX 4600
  PORTLAND, MAINE   04112-4600
  774-7000

Date of
Entry